FILED

98 DEC -7 AM 10:22

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

DEC 7 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

NINA J. EDWARDS,  }
    Plaintiff  }
       }  CIVIL ACTION NO.
vs.  }
       }  94-AR-143-M
JIMMY COSBY, ET AL.,  }
    Defendants  }

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment being reconsidered at the direction of the Eleventh Circuit. By order of February 25, 1995 this court granted summary judgment in favor of defendant, Dolgencorp, Inc. ("Dolgencorp") on claims of sexual harassment in violation of Title VII of the Civil Rights Act of 1964. Plaintiff, Nina Edwards ("Edwards") appealed to the Eleventh Circuit, which remanded the case for Dolgencorp's motion for summary judgment to be considered in light of *Burlington Industries, Inc. v. Ellerth* 118 S.Ct. 2557 (1998) and *Faragher v. Boca Raton*, 118 S.Ct. 2275 (1998). After reviewing the motion in light of these recent cases, this court again concludes that the motion is due to be GRANTED.

1

I. **Background**

In November of 1992, Edwards began her employment with Dolgencorp at its Dollar General store in Fort Payne, Alabama as a temporary, part-time clerk. During her tenure at Dollar General, she was promoted to apparel clerk but did not receive the small raise that should have accompanied the promotion. Edwards turned down an opportunity to become assistant manager of the store. Edwards' employment with Dollar General terminated on April 7, 1993.

James Cosby ("Cosby")[1] was the general manager for the Fort Payne store. As general manager, Cosby was the "boss" of the store, and no one located at the store had any greater authority. The evidence is conflicted with regard to the actual authority Cosby exercised and possessed. Cosby's deposition indicates that he had the power to hire employees, offer promotions, fire employees, and make up the week schedules for each employee at the store without consulting Stanley Morgan ("Morgan"), Dolgencorp's district manager. Morgan himself admitted in deposition that he does not recall Cosby consulting him about firing one of Edwards' co-workers, about offering Edwards a promotion to assistant manager, or about promoting her to apparel clerk. By affidavit however, Cosby stated that he did not have the authority to decide which employees would be hired, promoted, demoted, or terminated. Cosby states that he merely "carried out" Morgan's decisions.

Edwards claims that two or three days after she began working at

---

[1] Per order of March 8, 1995, Edwards' claims against Cosby were remanded to a state court. This court understands that Edwards and Cosby have settled their controversy.

2

Dollar General, Cosby began a pattern of sexual harassment that included inappropriate comments and inquiries into her private life, invitations to engage in sexual activities, and unwelcome touching. Edwards claims that Cosby told her that she had been hired for two reasons--to decorate the place and to "whooo, whooo." A co-worker of Edwards heard the comment and explained to Edwards that Cosby's "to whooo, whooo" meant "to give blow jobs." Edwards also testified that Cosby frequently made comments about Edwards being easy because she was blonde, and that Cosby once rubbed her bottom and her chest, telling her that "he was used to bigger breasts, but he could get used to smaller ones." Edwards testified that Cosby told her that a good color for her would be "slut pink." Whenever she would talk to a male customer for any period of time, Edwards claims that Cosby inquired as to whether there was any sexual relationship between her and the male customer. On one occasion, Cosby allegedly told Edwards that "[his] tongue [was] longer than most men's penis." On another occasion, Cosby allegedly told Edwards that she "would get along with him" if she would "give him some."

When Edwards was hired, she was given a Handbook that included Dollar General's sexual harassment policy. She also signed a piece of paper indicating that she had read and understood the Handbook. Edwards claims that she actually did not read the Handbook, was never told that the Handbook included Dollar General's sexual harassment policy, and states that she did not see any posters typically used by Dolgencorp to inform employees of their employment rights. In several places, the Handbook indicates that sexual harassment violates company policy and subjects the harasser to discipline, including discharge.

3

The Handbook provided a telephone number through which an employee could lodge a verbal complaint, an address of a different department to which the employee could complain, and stated that an "open-door" policy exists with respect to all types of work-related complaints. On page 19, the Handbook specifically provided:

**Reporting Sexual Harassment**

> If you feel you are being discriminated against or harassed in any manner, please follow the procedures outlines below. All inquiries will be investigated immediately and appropriate action taken.
> 1. _Report the incident_: Report the incident to the Human Resources Department in Nashville (1-615-386-4000)
> 2. _Written Statement_: Each reported complaint should be followed up by a written statement of the incident including a list of persons involved.
> 3. _Response_: You will receive a response, after all the facts have been investigated, from the Human Resources Department listed in item #1 above.
> 4. _Confidentiality_: All investigations, reviews or actions taken will be conducted and held in the strictest confidence possible.
>
> Complaints about sexual harassment will be responded to promptly and equitably. The right to confidentiality of all employees of the Company will be respected insofar as possible. This policy explicitly prohibits retaliation against individuals for bringing forward complaints of sexual harassment. Formal procedures will not be initiated without a written, signed complaint.

Edwards never followed any of these procedures outlined in the Handbook. In fact, Edwards claims that she only learned that such material was in the Handbook after consulting an attorney. Despite her claim that she did not know of the sexual harassment policy outlined in the Handbook, Edwards admits that she knew she could complain to Morgan, Cosby's superior. As Dollar General's district manager overseeing the Fort Payne store, Morgan visited that store periodically and talked with employees. Edwards never brought her concerns to Morgan's attention. Edwards attempts to explain her

4

failure to report the alleged harassment by stating that she feared Cosby would effect some type of retribution against her if she complained. As support for this explanation, Edwards reports an incident wherein Cosby warned a group of employees, herself included, that "anyone who went behind [Cosby's] back" would "pay for it."

Towards the end of her employment, Edwards told Cosby not to touch her. Edwards claims that Cosby reduced her hours from 30 to 27 in response. She also claims that her duties were substantially increased. Edwards eventually left her employment on April 7, 1995, claiming that the hostile environment forced her out of her job and constituted a constructive discharge.

## II. Discussion

The central issue is not whether Cosby's actions created an actionable hostile environment, but whether Dolgencorp is liable for any unlawful acts perpetrated by Cosby.[2] More specifically, the issue is whether Dolgencorp is subject to *vicarious liability*.[3]

In its earlier memorandum opinion, this court devoted much of its

---

[2] Dolgencorp assumes, for the purposes of its summary judgment motion *only*, that Cosby was Edwards' supervisor and that an actionable hostile environment was created. Dolgencorp does not waive argument on either of these issues.

[3] *Burlington* and *Faragher* also recognize that an employer can be liable for the acts of its supervisors if the employer was negligent -- that the employer knew or should have known of the harassment but did nothing to prevent it. Edwards admits that she never told anyone at Dolgencorp of the harassment, precluding the possibility of actual knowledge. This court previously found that the nature and level of harassment did not rise to the level sufficient to impute knowledge to the employer, precluding a finding of constructive knowledge. *Mem. Op.* at 13-14. The question of whether liability exists on a negligence theory has thus previously been resolved in Dolgencorp's favor.

5

attention to the nature of Edwards' claim -- inquiring whether she stated a claim based on *quid pro quo* sexual harassment, hostile environment, or a combination of the two theories. *Burlington Industries* and *Faragher* make clear that the labels of *quid pro quo* and hostile environment make little difference in assessing whether an employer may be vicariously liable for the unlawful acts of its supervisors. *Burlington Industries*, 118 S.Ct. at 2265. These categories are only helpful as a means of distinguishing situations in which threats of tangible employment action are actually carried out (*quid pro quo*), and those situations involving unfulfilled threats of tangible employment action (hostile environment). The labels themselves do not determine liability. *Id.* In *Burlington Industries* and *Faragher* the United States Supreme Court articulated a new method for determining whether vicarious liability exists:

> An employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

*Burlington Industries*, 118 S.Ct. at 1270; *Faragher*, 118 S.Ct. at 2293.

### A. Tangible Employment Action

Because the availability of the affirmative defense turns on whether a tangible employment action has been taken or merely

threatened, the first question to be addressed is whether the supervisor has taken <u>tangible</u> employment action. Edwards submits that tangible adverse employment action was taken against her, as evidenced by (1) the imposition of additional duties on her, (2) the reduction in her hours, (3) the alleged *quid pro quo* relationship Cosby attempted to create; and (4) her "constructive discharge." For the reasons that follow, this court concludes that no tangible employment action was taken against Edwards.

### *Imposition of Additional Duties and Reduction in Hours*

Edwards argues that Cosby required her to perform essentially two jobs simultaneously and then criticized her when she could not adequately perform all of her duties. A thorough review of the file indicates that, while Edwards' briefs repeatedly mention the imposition of additional duties, the only <u>evidence</u> to this effect on file with the court is the following statement found in Edwards' affidavit: "[Because] I did not [respond favorably to Mr. Cosby], he penalized me, and he increased my work load on less hours." (Edwards Aff. p.6).

As for Edwards' contention that the reduction in her scheduled hours from 30 to 27 hours during the last two weeks of her employment constitutes a tangible employment action, this court has previously found this contention did not demonstrate that tangible aspects of Edwards' employment were affected as a result of Cosby's alleged behavior. *See Mem. Op.* at 12. No evidence or argument offered by Edwards has persuaded this court to change this earlier finding.

The imposition of additional duties and reduction in working hours is insufficient evidence to demonstrate that a tangible

7

employment action occurred. In *Burlington Industries,* the Supreme Court defined "tangible employment action" as "a <u>significant</u> change in employment status, such as hiring, firing, failing to promote, reassignment with <u>significantly</u> different responsibilities, or a decision causing a <u>significant</u> change in benefits." 118 S.Ct. at 2268 (emphasis supplied). The imposition of additional duties, even when viewed in conjunction with a minor reduction in hours, simply does not qualify as a "reassignment with significantly different responsibilities." *See Reinhold v. Commonwealth of Virginia,* 151 F.3d 172,175 (4th Cir. 1998) (assignment of extra work and "other harm" is not tangible employment action); *Booker v. Budget Rent-a-Car Systems,* 17 F. Supp.2d 735, 746 (M.D.Tenn. 1998). That phrase contemplates a factual situation more akin to the one found in *Booker v. Budget Rent-a-Car Systems.* In *Booker,* the United States District Court for the Middle District of Tennessee concluded that a tangible employment action was taken where the plaintiff's reassignment decreased his maximum salary grade (though not affecting his actual salary), diminished his level of authority, changed his work responsibilities and required him to work weekends and nights instead of the regular weekday schedule his former assignment permitted. *Id.*

Even assuming, however, that the addition of new duties to Edwards' work load and/or the reduction in her hours somehow does constitute a <u>significant</u> change in employment status, the automatic imputation of liability to Dolgencorp is still unwarranted because Edwards offers no evidence to connect any tangible employment action to Cosby's behavior. In *Butler v. Ysleta Independent School District,* the United States Court of Appeals for the Fifth Circuit indicated an

8

unwillingness to assume a connection between occurrences that could constitute "tangible employment actions" and the allegedly unlawful behavior. 1998 WL 792557, *4 (5th Cir.). In *Butler*, the Fifth Circuit considered whether reassigning a teacher to a different grade level constituted a "reassignment with significantly different responsibilities." The court noted the plaintiff's failure to provide evidence connecting the reassignment to the alleged sexual harassment and stated that "the reassignment of a number of other employees suggests that no such evidence exists." *Id*.

In the case here under consideration, Edwards similarly fails to provide evidence -- other than a conclusory statement in her affidavit -- connecting the additional duties imposed on her or the reduction in her hours to Cosby's behavior. The fact that the additional requirements were imposed on her at a time when she was working fewer hours in fact undermines her ability to make this connection in much the same way that the concurrent reassignment of other teachers undermined the plaintiff's claim in *Butler*. *See* 1998 WL 792557, *4. Dolgencorp has introduced evidence indicating that *all* employee hours, including Cosby's, were reduced at that time due to a slow down in business. Edwards has done nothing to show that she was singled out in any way. Further, the reduction in work hours of all employees would necessarily require the performance of additional duties for *all* employees.

In short, neither the imposition of additional duties on Edwards nor the reduction in her hours constitutes a "tangible employment action." Even if either or both did constitute a tangible employment action, Edwards has failed to make the necessary connection between

9

these actions and Cosby's behavior. This court, like the Fifth Circuit, is unwilling to simply assume such an important element of Edwards' case.

### Quid Pro Quo Harassment

Just as the imposition of additional duties and the reduction in hours fail to show that tangible employment action was taken against Edwards, so does the allegation of a *quid pro quo* relationship fail to evidence the occurrence of a tangible employment action. This court has previously concluded that Edwards did not demonstrate the existence of a *quid pro quo* relationship as that concept was defined prior to the *Burlington Industries* and *Faragher* decisions. *See Mem. Op.* at 10-12. The opinion of February 25, 1995 rejected the notion that a plaintiff can rely on constructive discharge to demonstrate a *quid pro quo* relationship. *Id.* at 11. The opinion further concludes that the reduction in hours did not suggest that "<u>tangible</u> aspects of Edwards' employment were affected by her refusal 'to go along' with Cosby's alleged harassment." *Id.* at 12. On April 4, 1995, the court further affirmed this finding by denying Edwards' motion to alter or amend judgment, in which she attempted to convince the court to conclude that sufficient evidence was presented to find the existence of a *quid pro quo* relationship. In her response to Dolgencorp's supplementary brief in support of its motion for summary judgment, Edwards has again failed to persuade this court to disturb this earlier finding. In short, Edwards cannot rely on her *quid pro quo* argument to demonstrate that a tangible employment action occurred because there was no *quid pro quo* relationship.

10

## Constructive Discharge

Edwards' contention that her alleged constructive discharge constitutes tangible employment action ultimately fails, as a matter of law, because Edwards was not constructively discharged. Constructive discharge requires a demonstration that working conditions were so intolerable that a reasonable person under the same circumstances would be compelled to resign. *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 754 (11th Cir. 1997), *reh'g denied*; *Garner v. Wal-mart Stores, Inc.*, 807 F.2d 1536, 1538 (11th Cir. 1997). Edwards' brief notes that:

> [She] is a relatively uneducated working mother, without a husband to support her. She has been the victim of previous sexual abuse, and it is reasonable to expect that, when she was placed in these circumstances under these conditions, it would create a situation for her so difficult, that it would result in her constructive discharge.

(Plaintiff's Brief, p.20). Edwards' particular sensitivities, however, are of no consequence since constructive discharge is measured by an objective "reasonable person" standard. The Eleventh Circuit has held that a reasonable person would not "assume the worst, and [would] not jump to conclusions too fast." *See Kilgore*, 93 F.3d at 754; *Garner*, 807 F.2d at 1538. The application of this statement requires an employee to provide the employer with notice of the harassment and sufficient time to remedy the situation. *Kilgore*, 93 F.3d at 754; *Garner*, 807 F.2d at 1538; *Jones v. USA Petroleum Corp.*, 1998 WL 655581, *3 (S.D. Ga.), -- F. Supp.2d --; *Hernandez v. Prudential Ins. Co.*, 977 F. Supp. 1160, 1166 (M.D.Fla. 1997). Constructive discharge will generally not be found unless the employer is given sufficient time to

11

remedy the situation. *Kilgore*, 93 F.3d at 754. Obviously, an employer cannot be given sufficient time to remedy the situation if it is not notified that harassment is or may be occurring. *Jones*, 1998 WL 655581, at *3.

Edwards has not demonstrated an environment so intolerable that she had no choice but to resign, but even if she did, it is undisputed that Edwards never notified her employer in any way that she was experiencing sexual harassment. Edwards utter failure to notify Dolgencorp of the situation and provide it an opportunity to remedy the problem, compels the conclusion that she was not constructively discharged. *See Kilgore*, 93 F.3d at 754; *Garner*, 807 F.2d at 1538; *Jones*, 1998 WL 655581, at *3; *Hernandez*, 977 F. Supp. at 1166.

### B. Affirmative Defense

Having concluded that Edwards has identified no tangible employment action that would eliminate Dolgencorp's ability to assert the affirmative defense outlined in *Burlington Industries* and *Faragher*, the question now becomes whether Dolgencorp can succeed in asserting that defense. Under *Burlington Industries* and *Faragher*, Dolgencorp may yet be held vicariously liable for the actionable hostile environment created by Cosby[4] unless it can demonstrate, by a preponderance of the evidence, that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that Edwards unreasonably failed to take advantage of any preventative or corrective

---

[4] Again, Dolgencorp has assumed for the purposes of this motion *only* that Cosby was Edwards' immediate superior and that an actionable hostile environment existed.

opportunities Dolgencorp provided or to avoid harm otherwise. *See Burlington Industries*, 118 S.Ct. at 1270; *Faragher*, 118 S.Ct. at 2293. The evidence submitted by both parties clearly indicates that Dolgencorp satisfies the affirmative defense.

### *First Prong*

Dolgencorp clearly exercised reasonable care to prevent sexually harassing behavior. As stated earlier in this opinion, and as alluded to in the Memorandum Opinion of February 25, 1995, Dolgencorp had in place a grievance procedure specifically addressing sexual harassment. *See Mem. Op.* at 10-11. Upon hire, Dolgencorp issued its Handbook to Edwards and to all of its employees and instructed them to read it. The Handbook itself instructs the employees to read it. Dolgencorp even required Edwards to sign a document indicating that she not only read but understood the Handbook. Edwards signed the document. The Handbook provides several avenues through which an employee can bring a complaint to management's attention. The employee is not placed in a situation in which the only person to whom she could complain is the harassing supervisor.

Edwards points to alleged deficiencies in Dolgencorp's efforts to prevent sexual harassment. Edwards' brief makes much of the facts that Dolgencorp offered its employees no additional training on the subject of sexual harassment and made no attempt, apart from the statements contained in the handbook, to advise employees of their legal rights. (Plaintiff's Brief, at 7-9, 24-26). Edwards claims that she saw no posters up at the Fort Payne store notifying employees of the steps to take in the event of harassment. Edwards complains that

13

she was never specifically told that the Handbook contained information about sexual harassment, and that, even if she had been so informed, she was not given time to read the Handbook at work.

In *Jones v. USA Petroleum Corp.*, the United States District Court for the Southern District of Georgia found a policy similar to that of Dolgencorp to be satisfactory. *See* 1998 WL 655581, at *4. In *Jones*, the defendant had an anti-harassment policy and grievance procedure that it communicated to its employees by requiring them to sign an anti-harassment form. The form instructed employees to report incidents of harassment to the defendant's personnel manager and provided a phone number through which employees were to contact the personnel office. *Id.* at *4-5. Despite the facts that the employer did not train its employees regarding sexual harassment, did not post its anti-harassment policy nor the grievance procedure, and did not even allow employees to keep the form containing that information, the *Jones* court concluded "as a matter of law that [defendant's] sexual harassment policy was effectively promulgated." *Id.* at *5.

This court reaches the same conclusion with respect to Dolgencorp's sexual harassment policy. Edwards' attempts to demonstrate the policy's ineffectiveness fail miserably. With respect to the training issue, this court concurs with the statement in *Jones* that it is for the employer, not a federal judge, to decide whether that employer wants to exceed what is required of it and to provide "sensitivity training." *Id.* at *6. This court likewise agrees with the *Jones* court in finding Dolgencorp's alleged failure to post notices informing employees of their rights inconsequential in light of the information contained in the Handbook and Dolgencorp's efforts to

14

encourage employees to read it. The court rejects the notion that any employer must take its employees by the hand and lead them to the exact location of information contained in a Handbook that the employees are specifically instructed (twice) to read. Edwards admits that she thought the Handbook contained certain rules and regulations for company employees. (Pl.'s Br., at 6; Edwards aff.). Inexplicably, however, it did not occur to Edwards that some of those rules might relate to sexual harassment. The court finds this particularly incredible in light of the fact that the alleged harassment began just days after Edwards was given the Handbook and told to read it. Equally incredible is Edwards' expectation that she be given company time to read the Handbook. Despite the court's incredulity, the court does not depend, for its conclusion, upon any assessment of Edwards' credibility.

### Second Prong

Turning to the second requirement of Dolgencorp's affirmative defense, the court finds that Edwards unreasonably failed to take advantage of any preventative or corrective opportunities Dolgencorp provided or to avoid harm otherwise. See Burlington Industries, 118 S.Ct. at 1270; Faragher, 118 S.Ct. at 2293. As previously noted, it is undisputed that Edwards made no attempt to comply with Dolgencorp's formal grievance procedures or to informally communicate her concerns to anyone at Dolgencorp. Edwards' efforts to explain away her failure to do so are futile.

This court recognizes that bringing complaints to management's attention may be difficult, but it is necessary to place some duty on

the employee to come forward. *See also Faragher*, 118 S.Ct. at 2292; *Coates v. Sundor Brands, Inc.*, 1998 WL 789169, at *7 (11th Cir.). Employers are not omniscient. Even the most diligent employer cannot possibly keep track of the day to day activities of its employees without policing the interaction of employees at each and every location. Title VII does not require this type of Orwellian surveillance.

Because Edwards did not bring the harassment to Dolgencorp's attention, there is no occasion to consider whether Dolgencorp took reasonable care in correcting sexual harassment.

### III. Conclusion

Neither the reduction in hours nor the imposition of additional duties provides evidence upon which to conclude that tangible employment action was taken with respect to Edwards. Edwards cannot point to a *quid pro quo* relationship (as that term was defined prior to *Burlington Industries* and *Faragher*) as evidence of a tangible employment decision because a *quid pro quo* relationship did not exist. Similarly, Edwards cannot rely on her constructive discharge to support her contention that tangible employment action was taken against her because she was not constructively discharged.

Because no tangible employment action was taken against Edwards, Dolgencorp can assert the affirmative defense outlined in *Burlington Industries* and *Faragher*. Edwards has put forth no evidence or argument undermining the efforts Dolgencorp made to prevent sexually harassing behavior. Edwards unreasonably failed to take advantage of the preventative measures Dolgencorp provided.

Edwards presented no evidence creating a genuine issue undermining Dolgencorp's defense. Dolgencorp is therefore entitled to judgment as a matter of law and the motion for summary judgement is due to be granted. An appropriate order granting summary judgment and dismissing the action will be entered separately.

DONE this 7 day of December, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE